IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00080-RBJ

NAMASTE SOLAR ELECTRIC, INC., a Colorado Cooperative,

    Plaintiff,

v.

HB SOLAR OF SOUTHERN CALIFORNIA, INC., a California Corporation;
PLUMP ENGINEERING, INC., a California Corporation;
RICHARD A. PLUMP, P.E., an individual,

    Defendants.

## ORDER

This matter comes before the Court on the Plump Defendants' (Plump Engineering, Inc. and Richard Plump, P.E.) Motion for Summary Judgment [ECF No. 31]. The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, the motion is denied.

## BACKGROUND

This case arises from the design, sale, and installation of a roof-based solar energy collection system for the City of Boulder's Betasso Waste Water Treatment Facility. The general contractor on the project, McKinstry Essention, Inc., subcontracted with Namaste Solar Electric, Inc. ("Namaste Solar") for the installation of a solar energy collection system for the project. Namaste Solar, a solar installer based in Boulder, Colorado, contracted with defendant HB Solar of Southern California, Inc. ("HBS") for the design and fabrication of the solar collection system. Among other things, the system had to operate successfully notwithstanding

Boulder's occasional extreme weather conditions, including up to a 135 mph wind load. HBS represented that it could provide such a system, that it would take three days to complete the engineering and design work, that the system could withstand wind speeds up to 150 miles per hour, and that the design calculations would be stamped and sealed by a Colorado-licensed engineer.

HBS recommended Plump Engineering, Inc. ("PEI") for the purpose of providing review and approval of the design calculations. PEI is an architectural, structural and civil engineering, and land surveying firm located in Anaheim, California. Richard Plump is a professional engineer licensed in the state of Colorado. I will frequently refer to the Plump defendants collectively as Plump unless otherwise indicated.

On August 23, 2011 Plump issued the stamped set of calculations and specifications for the project. Upon review, however, Namaste Solar found that the stamped drawings contained incorrect design loads, in particular noting that the designs could only withstand 85 mph winds, not the 150 mph winds the stamp and seal indicated. Plump issued a revised set of the drawings the next day. HBS assured Namaste Solar that the design had been revised and corrected. Then, on August 30, 2011 Plump issued yet another set of structural calculations, with Mr. Plump representing that "I have reviewed the solar system and the attached 27 sheets of calculations and it is my professional opinion that the solar system will meet the snow load and wind load requirements as designed." PEI Structural Calculations for Client HB Solar [ECF No. 32-3].[1] On September 2, 2011, following the submission of the final design and stamped calculations, Namaste Solar submitted a purchase order with HBS for the solar system.

---

[1] Though the typed date on this form says August 23, 2011, a handwritten date of August 30, 2011 is included on the form in the same ink in which the form is signed. The Court presumes that this new date was indicated by the signor, Mr. Plump, though such a finding is not material to the resolution of this motion.

The installation of the system was completed in December 2011. The City of Boulder inspected and approved the installation on December 15, 2011. Namaste Solar claims that on December 31, 2011 the system failed due to high winds, resulting in detached panels and other damage. A second wind event allegedly occurred on January 23, 2012, causing further damage. On or about February 2, 2012, Namaste Solar was advised that the City of Boulder refused to accept the solar system.

## PROCEDURAL POSTURE

On December 3, 2013 Namaste Solar filed this action in the Boulder District Court. Plump (with HBS's consent) removed the case to federal district court on January 9, 2014 pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332.

The Amended Complaint lists six causes of action, four of which are asserted solely against HBS. However, although HBS was served, it did not respond. A clerk's default was entered against HBS on April 16, 2014.

The two claims asserted against the Plump defendants are (1) negligent misrepresentation and (2) negligence. Namaste Solar seeks damages resulting from damage to the solar collection system, as to which it claims title had not yet passed to the City of Boulder, and related economic losses. On April 30, 2014 the Plump defendants filed a motion for summary judgment on the grounds that the economic loss rule bars the two claims against it. [ECF No. 31]. That motion became ripe for review on June 23, 2014 upon the filing of Plump's reply brief. [ECF No. 34].

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

"The economic loss rule is intended to maintain the sometimes blurred boundary between tort law and contract law." *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005). The Colorado Supreme Court has explained that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 865 (citations omitted). While contract obligations develop from promises made by the parties, tort obligations arise from legal duties. *Id.* at 865–66.

"The key to determining whether the economic loss rule bars a tort claim is 'determining the source of the duty that forms the basis of the action.'" *Jorgensen v. Colorado Rural Props., LLC*, 226 P.3d 1255, 1258 (Colo. App. 2010) (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000)). In determining the source of the duty courts consider "(1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; and (3) whether the negligence duty differs

in any way from the contractual duty." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004) (citing *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269–70 (Colo. 2000)).  Thus, "even a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract." *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011) (citations omitted).

With those broad principles in mind, I turn to the two claims asserted against the Plump defendants.

### A. Negligent Misrepresentation.

Plaintiff's theory, simply stated, is that because of Plump's negligent misrepresentation that the design of the system met the wind load requirements of the project, plaintiff agreed to purchase the system from HBS.

In Colorado, the elements of negligent misrepresentation are:

> (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

*Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (citation omitted).  "The duty underlying the tort of negligent misrepresentation—to refrain from supplying false information to others for guidance in a transaction involving a pecuniary interest—is recognized at common law."  *A Good Time Rental*, 259 P.3d at 541.   Colorado courts have expounded on the scope of negligent misrepresentation claims, clarifying that "the scope of this tort pertains to conduct that leads or induces another to enter into a transaction or agreement, not to representations directly related to performance of a contract." *Id.*

The elements of negligent misrepresentation appear to fit the facts alleged by Namaste Solar. However, this begs the question of whether the claim runs afoul of the economic loss rule. To answer that question, I first turn back to *Town of Alma,* the Colorado Supreme Court's cornerstone case on the economic loss rule. After explaining the rule, the Court noted certain exceptions. "[W]e have recognized that some special relationships by their nature automatically trigger an *independent* duty of care that supports a tort action even when the parties have entered into a contractual relationship." 10 P.3d at 1263 (emphasis added). One of the examples the Court listed as an exception was negligent misrepresentation. *Id.* (citing *Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 72 (Colo. 1991).

That this was never meant as a holding that negligent misrepresentation is always exempt from the economic loss rule is evident from the *Keller* case itself. The Kellers purchased a grain storage system in reliance on the manufacturer's representations in advertising materials that its system would reduce or eliminate the need for protein supplements in feeding dairy herds. By the terms of the purchase agreement, however, which contained an integration clause, the buyers represented that they did not rely on any advertisements, brochures or other written statement that they might have read. The Court concluded that a negligent misrepresentation claim based on representations during the course of the sale can in some circumstances be brought despite the subsequent execution of the fully integrated sales agreement. 819 P.2d at 72. Significantly, the Court added that "a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentation." *Id.*

In *BRW*, a case in which claims of both negligence and negligent misrepresentation were determined to have been barred by the economic loss rule, the Court distinguished *Keller* on the

basis that the contracting party's negligent misrepresentation of material facts to the Kellers occurred before the execution of the contract, not during the performance of the contract. 99 P.3d at 75. Similarly, in *URS Group, Inc. v. Tetra Tech FW, Inc.*, 181 P.3d 380 (Colo. App. 2008), the court (citing *BRW*) reiterated that misrepresentations that occur before the parties enter into a contract are not barred by the economic loss rule. 181 P.3d at 391.

I will return to *BRW* below, but I need go no further here to decide that Plump's motion to dismiss Namaste Solar's negligent misrepresentation claim under the economic loss rule must be denied. According to the plaintiff, Plump's alleged misrepresentation that the system would meet wind load requirements occurred before Namaste Solar agreed to purchase the system from HBS and likewise induced Namaste Solar to enter into the contract.

B. **Negligence.**

Plaintiff also alleges that Plump's negligent performance of review and evaluation of HBS's plans and specifications caused Namaste Solar's losses irrespective of the inducement to contract with HBS. It is not entirely clear to me why plaintiff feels the need to assert this alternative theory, but I conclude that the economic loss rule does not bar it. The analysis is a little different.

Namaste Solar alleges that Plump owed it a duty to cause the solar system to be designed in a good and workmanlike manner, and to exercise reasonable care in its design. First Amended Complaint [ECF No. 4] at ¶ 98. Namaste Solar adds that Plump's duty of care "included the duty to ensure that all design was performed in accordance with industry standards, applicable codes, and applicable plans and specifications, or a greater duty of care if reasonably required under the circumstances." *Id.* at ¶ 101. Although the damages arise in part from damage to property that Namaste Solar allegedly still owned at the time of the wind incidents, as well as

other economic losses, I will assume for present purposes that the economic loss rule potentially applies to at least a part if not all of the claimed losses.

As indicated above, the Court in *BRW* listed three factors to consider in determining the source of the duty at issue. Applying the first factor, whether the relief sought in negligence is the same as the contractual relief, the answer is "no," for the simple reason that Plump's contract did not impose a duty to perform his services in accordance with the standard of care applicable to licensed professional engineers. This stands in contrast with *BRW* itself.

In *BRW*, the City of Denver hired an engineer, BRW, to design plans and specifications for the construction of two bridges over the Platte River. In its contract BRW agreed that its drawings and specifications would "represent a thorough study and competent solution for the Project as per usual and customary professional standards and shall reflect all architectural and engineering skills applicable to that phase of the Project." After BRW completed the drawings and specifications the City hired a general contractor for the project, which in turn subcontracted with Dufficy to provide fabrication and painting of structural steel in accordance with the specifications. Dufficy ran into problems with the painting requirements and incurred losses on its subcontract. It then sued BRW for negligence and negligent misrepresentation, essentially on the basis that the design and specifications for the paint system were inappropriate for Denver's altitude and arid climate.

As in the present case, BRW had no direct contractual relationship with Dufficy. That notwithstanding, the Court concluded that in large construction projects the parties rely on a network of interrelated contracts to allocate their risks, duties, and remedies. *Id.* at 72–73. It further held that BRW's duty to perform its work in accordance with professional standards, i.e., the standard of care applicable to engineers, was not independent of its contract with the City

(the foundation on which the network of interrelated contracts was built) but was expressly set forth in the contract. *Id.* at 74.

I will assume without deciding (to Plump's benefit for present purposes) that the relationship among Namaste Solar, HBS, and Plump is an interrelated network of contracts that could give rise to a contractual duty and trigger the economic loss rule. Nevertheless, unlike the engineer's contract in *BRW*, Plump's contract with HBS does not contain an agreement to perform the services in accordance with the standard of care applicable to competent professionals who perform similar services. Rather, in the contract, entitled "Confirmation of Agreement for Engineering Services," Plump simply agreed to "[r]eview the solar panel wind calculations performed under the supervision of Plump Engineering, Inc." [ECF No. 31-1 at 3]. If Plump owed Namaste Solar a duty to perform his review according to the standard of care applicable to professional engineers, i.e., non-negligently, the duty was not expressed in the contract and, under *BRW*, would not be barred by the economic loss rule.

Later Colorado cases decided by both federal and state courts return to the same theme, finding that "even if the duty would be imposed in the absence of a contract, it is not independent of a contract that 'memorializes' it." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (quoting *BRW*, 99 P.3d at 74). Similarly, "[a]n independent duty exists only if the duty arises from a source other than the relevant contract, and if the duty is not also imposed by the contract." *Steward Software Co., LLC v. Kopcho*, 275 P.3d 702, 709 (Colo. App. 2010). And, "even a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract." *A Good Time Rental*, 259 P.3d at 537.

The parties debate the applicability of two relatively recent decisions by different panels of the Colorado Court of Appeals. In *Stan Clauson Associates, Inc. v. Coleman Brothers*

9

*Construction, LLC*, 297 P.3d 1042 (Colo. App. 2013), a developer hired a land planner to provide a development analysis for a property in Basalt, Colorado. Things did not go well, and the land planner ultimately sued the developer for breach of contract. The developer counterclaimed, contending that the land planner negligently provided inaccurate advice about whether the property could be subdivided and developed. The contract imposed an express duty on the land planner "to make a good faith effort to present the project in the application and hearing process in a manner that is responsive to the code and other identified issues" as well as an implied duty of good faith and fair dealing. *Id.* at 1046–47. The trial court granted summary judgment dismissing the negligence counterclaim as barred by the economic loss rule.

On appeal, the Court of Appeals interpreted Colorado law as follows:

> Professionals are held to duties and standards of care independent of those established by contracts for their services. Professional standards of care reflect the policy that members of professions must do their work not just reasonably well, but rather "in a manner consistent with members of the profession in good standing." *Command Commc'ns, Inc. v. Fritz Cos.*, 36 P.3d 182, 189 (Colo. App. 2011). If a contract for professional services does not explicitly adopt the professional standard of care, and Colorado law identifies the provider as a professional, fulfillment of the professional standard of care is a duty that is independent of the services agreement, and the economic loss rule will not bar a claim for breach of the professional duty. *See BRW, Inc.*, 99 P.3d at 74 (economic loss rule barred professional tort claim where contract explicitly adopted the "usual and customary professional standards [of care]."

*Id.* at 1045.

The parties' contract, unlike the contract in *BRW,* did not explicitly adopt the professional standard of care. Nevertheless, the appellate panel affirmed the grant of summary judgment but only because it concluded that land planners are not held to a professional standard of care. *Id.* at 1047. In that situation, "the allegedly negligent actions of which Coleman complains provide a basis for a breach of contract claim, and there is no duty of care independent of the parties'

10

agreement." *Id.* at 1048. The *Stan Clauson* court contrasted land planners with engineers, attorneys, doctors and others who are held to a professional standard of care. *Id.* at 1045.

In *Engeman Enterprises, LLC v. Tolin Mechanical Systems Co.*, 320 P.3d 364 (Colo. App. 2013), *cert. denied,* No. 13SC256, 2014 WL 620357 (Feb. 18, 2014), the defendant, a company that designs, installs, maintains and repairs cooling systems, was engaged to perform emergency repairs on an ammonia-charged cooling system that failed. While the defendant began its work the parties' representatives signed two agreements that required the defendant to perform the work in a "prudent and workmanlike manner." 320 P.3d at 367. However, while trying to transfer ammonia from a portable tank into the cooling system defendant's employee caused ammonia to flow from the system into the tank, resulting in an explosion and substantial damage. There was a question as to whether the defendant owed the plaintiff an independent duty of care to handle anhydrous ammonia, a hazardous substance, safely. Plaintiff conceded that its contract required the defendant to exercise reasonable care in the performance of its work, whether as expressed in the written agreement or implied in an oral contract. As such, the Court concluded that while the defendant would have owed a common law duty of care to handle ammonia safely, the duty did not differ from that imposed by the contract. "[B]ecause a reasonable duty of care owed by defendant was at least implied in the contract, it follows that plaintiff has not shown any duty independent of the contract, and the economic loss rule bars the tort claim and holds the parties to the contract's terms." *Id.* at 370.

*Stan Clauson* and *Engeman* are not necessarily inconsistent. Both cases recognize that all contracts contain either an express or an implied duty to perform one's contractual obligations in a reasonable and workmanlike manner. *Stan Clauson* added that if the defendant is a professional, such as an engineer, he has a duty independent of the contract, not just to do the

work reasonably well but in a manner consistent with members of the profession in good standing. *Engeman* did not discuss whether a professional owes a different duty of care than other contracting parties.

Plump argues that *Stan Clauson* was wrongly decided. Reply [ECF No. 34] at 2–3. If so, then Plump's forum to correct the Court of Appeals' error was either the Court of Appeals or the Colorado Supreme Court. Instead, Plump removed the case from state court to this Court. My job is not to overrule the Colorado Court of Appeals but to apply its rulings until they are changed by the appropriate state court.

In short, still applying the first of *BRW*'s three factors, I conclude that Plump did not have an express contractual duty, even to HBS, to perform its work according to the standard of care applicable to licensed professional engineers. Under *Stan Clauson*, Plump owed an independent duty to HBS to perform its engineering services "not just reasonably well, but rather 'in a manner consistent with members of the profession in good standing.'" 297 P.3d at 1045. The economic loss rule therefore does not apply.

Of course, Namaste Solar still must show that this independent duty of care was owed not just to HBS but also to Namaste Solar. In its motion for summary judgment, and again in its reply brief, Plump asserts, without further analysis or citation of law, that "Defendants owed Namaste no independent duty, as there was no special relationship between them which would give rise to such a duty." [ECF No. 31 at 6; ECF No. 34 at 2–3]. The Court of Appeals in the *BRW* case held that licensed engineers owe contractors and subcontractors who are relying on the engineer's plans and specifications a duty at common law "to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of that profession and to perform faithfully and diligently any service undertaken as an engineer in the manner a reasonably prudent engineer

12

would under the same or similar circumstances." *Dufficy & Sons, Inc. v. BRW, Inc.*, 74 P.3d 380, 384 (Colo. App. 2002). The Colorado Supreme Court did not confirm or deny that engineers have such a common law duty, holding only that because BRW's contract expressly imposed a professional standard of care, the common law duty was not independent of the contract, and the economic loss rule was therefore triggered. 99 P.3d at 73–74. Because the parties here did not brief the question whether an engineer owes a common law duty of care to a party with which it has no direct contractual relationship but which it knows is relying on the competent performance of its services, I do not decide that question today.[2]

## ORDER

For the foregoing reasons, Plump Defendants' Motion for Summary Judgment [ECF No. 31] is DENIED.

DATED this 26th day of August, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

[2] Contrary to Plump's motion, [ECF No. 31 at 6], the Court of Appeals did not hold or suggest in *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 483 (Colo. App. 2003), that "courts have flatly refused to expand a finding of independent duty to participants in commercial construction projects."